26CV5974

RECEIVED
SDNY PRO SE OFFICE
2026 JUL 15 AM 11:4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DENNIS McKESEY,
Plaintiff,

v.

AMERICAN EXPRESS NATIONAL BANK,
Defendant.

Case No.: to be assigned by the Clerk of Court

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Dennis McKesey ("Plaintiff"), proceeding pro se, for his Complaint against Defendant American Express National Bank ("Defendant" or "Amex"), alleges as follows upon personal knowledge as to himself and his own acts and observations, and upon information and belief as to all other matters:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages brought by an individual consumer against Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), arising from Defendant's furnishing of inaccurate information to the nationwide consumer reporting agencies concerning six of Plaintiff's charged-off credit card accounts, and Defendant's failure to conduct reasonable investigations of that information after receiving notice of Plaintiff's disputes through the consumer reporting agencies, as required by 15 U.S.C. § 1681s-2(b).

2. The core of Defendant's misconduct is documented in Defendant's own reinvestigation responses. In investigation results dated June 24, 2026, transmitted to Plaintiff by Trans Union LLC ("TransUnion") under TransUnion File Number 468747558, Defendant caused each disputed account to be declared "VERIFIED AS ACCURATE" while, in the same results, changing the very data fields Plaintiff had disputed, including Balance, High Balance, Past Due, Rating, and Remarks. Information cannot simultaneously be accurate as previously furnished and in need of correction. Defendant's internally contradictory responses establish on their face that its investigations were not reasonable and that its verifications were false.

3. Even after Defendant's purported corrections, Defendant continued to furnish information that is inaccurate on its face, including a reported "Paid Monthly" payment obligation on charged-off accounts that have no scheduled payment, past-due amounts of one dollar on accounts placed for collection, a reported credit limit of $900 on an account with a reported high balance of $10,279, and two contradictory tradelines bearing the same account number.

4. As a direct and proximate result of Defendant's conduct, Plaintiff was denied credit by Citibank, N.A., suffered a documented decline in his credit scores, and suffered emotional distress.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p because this action arises under the FCRA, a federal statute.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Orange County, New York, within this District, because a substantial part of the events or omissions giving rise to the claims occurred in this District, where the inaccurate information was published in consumer reports concerning Plaintiff and where Plaintiff suffered the resulting harm, and because Defendant regularly transacts business in this District.

7. This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in the State of New York, issues credit cards to New York consumers, including the accounts at issue in this action, and furnished the information at issue to consumer reporting agencies knowing that it would be published in consumer reports concerning a New York resident.

## PARTIES

8. Plaintiff Dennis McKesey is a natural person residing in Central Valley, Orange County, New York. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

9. Defendant American Express National Bank is a national banking association with its principal place of business in Sandy, Utah. Defendant issued the consumer credit card accounts at issue in this action and regularly furnishes information concerning consumers to the three nationwide consumer reporting agencies, Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and TransUnion (together, the "CRAs").

Defendant is a furnisher of information within the meaning of 15 U.S.C. § 1681s-2. Defendant directs consumer credit reporting correspondence to P.O. Box 981537, El Paso, Texas 79998.

## STATUTORY BACKGROUND

10. Under 15 U.S.C. § 1681s-2(b), after a furnisher of information receives notice from a consumer reporting agency, pursuant to 15 U.S.C. § 1681i(a)(2), that a consumer disputes the completeness or accuracy of information the furnisher provided, the furnisher must: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the furnisher provided the information; and (E) if the disputed information is found to be inaccurate or incomplete or cannot be verified, promptly modify, delete, or permanently block the reporting of that information.

11. The investigation required by § 1681s-2(b) must be a reasonable one. Johnson v. MBNA America Bank, N.A., 357 F.3d 426, 431 (4th Cir. 2004); Boggio v. USAA Federal Savings Bank, 696 F.3d 611, 616-17 (6th Cir. 2012). A furnisher does not satisfy its statutory duty by merely confirming that the disputed data matches its own internal records without examining the underlying account documents relevant to the dispute.

12. Consumers have a private right of action against furnishers for violations of § 1681s-2(b). Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012).

13. A violation of the FCRA is willful, for purposes of 15 U.S.C. § 1681n, where the defendant acted knowingly or in reckless disregard of its statutory obligations. Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 57-58 (2007).

## FACTUAL ALLEGATIONS

### *A. The Accounts and Defendant's Facially Inaccurate Furnishing*

14. Plaintiff held six credit card accounts issued by Defendant, identified on Plaintiff's TransUnion consumer disclosure, File Number 468747558, as American Express account numbers

beginning 349992831486, 349992831465, 349992906058, 349992906055, 349992881582, and 349993057885, each followed by masked digits (the "Accounts").

15. In January 2026, Defendant closed the Accounts and charged them off. As of the June 24, 2026 TransUnion disclosure, Defendant furnished each Account with a Date Closed of January 15, 2026 or January 22, 2026, a Pay Status of "In Collection," and remarks stating "Closed by credit grantor" and "Placed for collection."

16. Once a credit card account is charged off and placed for collection, there is no scheduled monthly payment on the account. The account is no longer an active credit facility with periodic payment terms; the entire outstanding balance is due and owing.

17. Despite this, Defendant furnished each of the Accounts with Terms of "Paid Monthly." That representation is inaccurate and materially misleading because it communicates to users of Plaintiff's consumer reports, including creditors calculating Plaintiff's debt-to-income ratio, that Plaintiff carries active monthly payment obligations that do not exist.

18. Defendant furnished a Past Due amount of one dollar on the account beginning 349992906058, which Defendant simultaneously reported with a balance of $3,698; on the account beginning 349992906055, reported with a balance of $4,304; and on the account beginning 349992881582, reported with a balance of $6,533. A charged-off account placed for collection cannot be one dollar past due while carrying a multi-thousand-dollar unpaid balance. These entries are internally contradictory and inaccurate on their face.

19. Defendant furnished a Past Due amount of $883 on the account beginning 349992831465, which it reported with a balance of $11,537; a Past Due amount of $122 on the account beginning 349992831486, reported with a balance of $1,399; and Past Due amounts of $89 and $292 on the two tradelines bearing the account number beginning 349993057885. Each of these partial past-due amounts is inconsistent with Defendant's simultaneous reporting that the same accounts are charged off, closed, and placed for collection with the full balances outstanding.

20. On the account beginning 349992831486, Defendant furnished a Credit Limit of $900 and, at the same time, a High Balance of $10,279. A reported high balance more than eleven times

the reported credit limit is facially impossible or reflects a grossly inaccurate credit limit. An understated credit limit forseeably injures a consumer by distorting credit utilization calculations.

21. Defendant caused two separate tradelines bearing the same account number, beginning 349993057885, to appear on Plaintiff's TransUnion file with materially different data: one reported as an "Open Account" with a balance of $3,201, a high balance of $3,201, and a past-due amount of $89; the other reported as a "Revolving Account" with a balance of $1,039, a high balance of $1,256, a credit limit of $1,300, and a past-due amount of $292. The two tradelines also carry different estimated removal dates, September 2032 and October 2032, meaning Defendant furnished two different dates of first delinquency for the same account number. These tradelines contradict each other and cannot both be accurate.

22. Defendant also furnished balances on the Accounts that continued to increase after charge-off, beyond the amounts owed at charge-off as reflected in Plaintiff's account statements.

23. Defendant furnished a date of last payment on the Accounts that is approximately one month later than the actual date of Plaintiff's final payment, as reflected in Plaintiff's payment records.

***B. Plaintiff's Disputes and Defendant's Sham Investigations***

24. In April 2026, Plaintiff mailed written dispute letters to each of the three CRAs by United States Postal Service certified mail: to TransUnion under certified mail tracking number 92071902358909000038765685; to Experian under certified mail tracking number 92071902358909000038765708; and to Equifax under certified mail tracking number 92071902358909000038765692.

25. Plaintiff's dispute letters identified the Accounts and described the specific inaccuracies in Defendant's furnished information, including the balances that continued to grow after charge-off, the incorrect date of last payment, and the internally inconsistent account data, and requested that the information be corrected or deleted.

26. The United States Postal Service confirmed delivery of each dispute letter to the respective CRA.

27. On information and belief, upon receipt of Plaintiff's disputes, each CRA notified Defendant of the disputes within five business days through the Automated Consumer Dispute Verification ("ACDV") system operated through e-OSCAR, as required by 15 U.S.C. § 1681i(a)(2), and provided Defendant with all relevant information regarding the disputes.

28. Upon receiving each such notice, Defendant was obligated to perform the investigation and correction duties imposed by 15 U.S.C. § 1681s-2(b) with respect to each disputed Account.

29. Defendant responded to each ACDV by verifying its reporting, and each CRA thereafter informed Plaintiff that the disputed information had been verified as accurate.

30. On May 28, 2026, Plaintiff mailed TransUnion a written request for a description of the procedure used to determine the accuracy of the disputed information, pursuant to 15 U.S.C. § 1681i(a)(7), by certified mail under tracking number 9207190235890900004O432568.

31. TransUnion responded with investigation results dated June 24, 2026, under File Number 468747558, reflecting Defendant's responses to the reinvestigation of the Accounts.

32. As to the account beginning 349992831486, the June 24, 2026 results state that the disputed information was "VERIFIED AS ACCURATE; however, we updated: Balance; Date Updated; Past Due; Rating."

33. As to the account beginning 349992831465, the results state that the disputed information was "VERIFIED AS ACCURATE; however, we updated: Balance; Date Updated; High Balance; Past Due; Rating."

34. As to the account beginning 349992906058, the results state that the disputed information was "VERIFIED AS ACCURATE; however, we updated: Date Updated; High Balance."

35. As to the account beginning 349992906055, the results state that the disputed information was "VERIFIED AS ACCURATE; however, we updated: Balance; Date Updated; Rating."

36. As to the account beginning 349992881582, the results state that the disputed information was "VERIFIED AS ACCURATE; however, we updated: Balance; Date Updated; Rating."

37. As to the two tradelines bearing the account number beginning 349993057885, the results state that the disputed information was "VERIFIED AS ACCURATE; however, we updated: Balance; Date Updated; High Balance; Past Due; Remarks" as to one tradeline, and "VERIFIED AS ACCURATE; however, we updated: Balance; Date Updated; Past Due" as to the other.

38. Defendant's responses are internally contradictory. If the information Defendant previously furnished were accurate, no updates to Balance, High Balance, Past Due, Rating, or Remarks would have been required. If updates to those fields were required, then the information Defendant previously furnished, and verified in response to Plaintiff's April 2026 disputes, was inaccurate, and Defendant's verification was false. Under either reading, Defendant did not conduct the reasonable investigation that 15 U.S.C. § 1681s-2(b)(1)(A) requires.

39. Even after the updates reflected in the June 24, 2026 results, Defendant continued to furnish the facially inaccurate information described above, including the "Paid Monthly" terms on charged-off accounts, the one-dollar past-due amounts, the $900 credit limit against a $10,279 high balance, and the two contradictory tradelines bearing the same account number.

40. On information and belief, Defendant's handling of Plaintiff's disputes consisted of an automated or perfunctory comparison of the disputed data against Defendant's own internal records, without any review of the underlying account statements, payment records, or charge-off records relevant to Plaintiff's disputes, and without any substantive evaluation of the internal contradictions apparent on the face of the reported data.

41. A reasonable investigation of Plaintiff's disputes would have revealed each of the inaccuracies described in this Complaint, because each is either apparent on the face of the reported data or readily verifiable from Defendant's own account records.

42. Defendant failed to correct, modify, delete, or block the inaccurate information, and instead re-reported it to the CRAs following each dispute, in violation of 15 U.S.C. § 1681s-2(b)(1)(E).

*C. Plaintiff's Damages*

43. After Defendant verified the inaccurate information in response to Plaintiff's disputes, Citibank, N.A. denied Plaintiff's application for a Citi Strata Elite credit card, an adverse action based in whole or in part on information contained in Plaintiff's consumer reports, which included the inaccurate information furnished by Defendant.

44. Plaintiff's credit scores declined materially during the period in which Defendant furnished and re-verified the inaccurate information, as documented in credit score records maintained by Plaintiff.

45. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered emotional distress, including anxiety, stress, frustration, humiliation, and loss of sleep, aggravated by Defendant's repeated insistence that information it was simultaneously changing had been verified as accurate.

46. Plaintiff has also incurred out-of-pocket expenses, including certified mail postage and copying costs, and has expended substantial time and effort attempting to correct Defendant's inaccurate reporting.

**COUNT I**

**Willful Noncompliance with 15 U.S.C. § 1681s-2(b), pursuant to 15 U.S.C. § 1681n**

47. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

48. Defendant violated 15 U.S.C. § 1681s-2(b)(1)(A) and (B) by failing to conduct reasonable investigations of Plaintiff's disputes concerning each of the Accounts and by failing to review all relevant information provided by the CRAs, and violated 15 U.S.C. § 1681s-2(b)(1)(C), (D), and (E) by falsely reporting the disputed information as verified and by failing to correct, modify, delete, or block information that was inaccurate, incomplete, or unverifiable.

49. Defendant's conduct was willful within the meaning of 15 U.S.C. § 1681n because Defendant acted knowingly or with reckless disregard of its statutory duties. Defendant certified disputed information as accurate while simultaneously changing the disputed fields; it continued to furnish data that is contradictory and impossible on its face, including a $900 credit limit against a $10,279 high balance, one-dollar past-due amounts on charged-off accounts, monthly payment terms on accounts with no scheduled payments, and duplicate tradelines with conflicting data under a single account number; and it repeated this conduct across six accounts and multiple dispute cycles.

50. As a result of Defendant's willful noncompliance, Plaintiff is entitled to recover actual damages or statutory damages of not less than $100 and not more than $1,000 for each violation, punitive damages, and the costs of this action, pursuant to 15 U.S.C. § 1681n(a).

## COUNT II

### Negligent Noncompliance with 15 U.S.C. § 1681s-2(b), pursuant to 15 U.S.C. § 1681o, pleaded in the alternative

51. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

52. In the alternative, Defendant negligently failed to comply with the requirements of 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations of Plaintiff's disputes, failing to review all relevant information, falsely verifying inaccurate information, and failing to correct, modify, delete, or block inaccurate, incomplete, or unverifiable information.

53. As a result of Defendant's negligent noncompliance, Plaintiff is entitled to recover his actual damages, including damages for the denial of credit, the decline in his credit scores, his emotional distress, and his out-of-pocket expenses, together with the costs of this action, pursuant to 15 U.S.C. § 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant as follows:

(a) actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

(b) statutory damages of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

(c) punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

(d) the costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

(e) prejudgment and postjudgment interest as permitted by law; and (f) such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: Central Valley, New York
July 7, 2026

Respectfully submitted,

**Dennis McKesey**
Plaintiff, Pro Se
207 Smith Clove Rd
Central Valley, NY 10917
dennismckesey@gmail.com

D. McKesey
207 Smith Clove Rd.
Central Valley, NY 10917

CERTIFIED MAIL®

9589 0710 5270 1976 5356 85

Retail

UNITED STATES POSTAL SERVICE®

10007

RDC 99

U.S. POS
FCM LET
CENTRA
NY 1091
JUL 10, 2
$6.3
S2324P5

RECEIVED
SDNY PRO SE OFFICE
2026 JUL 15 AM 11:49

Pro Se Intake Unit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

USMS

10007-150728